Scribner, J.
This is an action brought under section 6351 of the Rev. Stat. by Edward H. Rhoades as assignee of James Raymer, Frank E. Seagrave and Orville B. Seagrave, late partners under the name Raymer, Seagrave & Company, to subject to sale certain interests in real estate conveyed to him for the benefit of creditors by said assignors, and to settle and adjust divers conflicting claims made in respect thereto.
All persons appearing to have any interest in the subject-matter of the controversy are made parties to the proceeding, and have asserted in the form of answers and cross-petitions, their several claims.
Two different parcels of real estate are set forth in the petition, numbered respectively, “one” and “two,” but the controversy submitted to us involves only the rights of the parties in the parcel designated as “ No. one.” This parcel is known in the pleadings and proceedings as the “ Guión tract.” The matters in contention among the parties as to their rights and interests in this tract, I will now, proceed to state and consider.
*70 1. On the 15th of December, 1882, James Raymer, Frank E. Seagrave, Orville B. Seagrave and John Yeager became the purchasers, at a judicial sale, of the tract of land above mentioned, known as the “ Guión tract.” This sale was duly confirmed December 18th, 1882 ; a deed was made on the same day, and recorded December 20, 1882. By the sale and conveyance above mentioned, each of said purchasers became invested with the legal title to an undivided one-fourth interest in said tract.
It is shown by the testimony and is conceded, that the purchase price of $25,714.00 paid for said land was provided by means of a temporary loan made by said purchasers, which loan was afterwards satisfied from the moneys raised upon certain bonds and mortgages of the date and character hereinafter stated.
2. On the 8th day of March, 1883, the said James Raymer, John Yeager, Frank E. Seagrave and Orville B. Sea-grave (their respective wives joining therein) executed to the defendant, the Pawtucket Institution for Savings, of Pawtucket, Rhode Island, a mortgage to secure the payment of ten thousand dollars according to the tenor and effect of two coupon bonds, each for five thousand dollars, dated March 8th,, 1883, and payable at Pawtucket, Rhode Island, in five years from April 1, 1883, with interest at six per cent, per annum, payable semi-annually in advance. This mortgage was acknowledged March 9, 1883, and was delivered for record March 13, 1883.
The property covered by this mortgage is described therein as follows:
“ That part of the Leon Guión tract in the city of Toledo, Lucas county, Ohio, containing thirty (30) acres of upland, adjoining the north forty (40) acres of said tract, and bounded on the north and south by lines parallel with the north line of said Guión tract.”
3. On the 12th of March, 1883, the same parties grantors in the foregoing mortgage executed to the defendant Jennie W. *71 Lasalle a mortgage to secure the payment of a further sum of ten thousand dollars in five years from April 1,1883, with interest at the rate of six per centum per annum, payable semiannually. This mortgage was acknowledged March 13,1883, and delivered for record on the same day. The property covered by this mortgage is described as follows:
“ The north forty (40) acres of upland in the Leon Guión tract in and adjoining the city of Toledo, Lucas county, Ohio, formerly in Manhattan township, and bounded on the south by a line parallel with the north line of said tract.”
4. On the 13th day of March, 1883, the same mortgagors executed tc Jude Taylor a mortgage to secure the payment of the further sum of six thousand dollars, in five years from April 1, 1883, with interest at the rate of six per centum per annum, payable semi-annually. This mortgage was acknowledged March 14, 1883, and was received for record March 14, 1883. The property conveyed by said mortgage is described as follows:
“ The west ten (10) acres of that part of the Leon Guión tract, south of and adjoining the north seventy (70) acres, all in the city of Toledo, Lucas county, Ohio, located on Summit avenue and the west bank of the Maumee river.”
The making and negotiating of these mortgages appear to have constituted substantially one transaction. They are all in the same handwriting. They are dated the 8th, 12th and 13th of March, respectively; two of them were deposited for record on the 13th and one on the 14th of March. The several loans were negotiated by the same party or parties. Taken together, they provide about the sum required to meet the moneys advanced to pay the purchase price of the lands mortgaged, and the three mortgages were so adjusted -with reference to each other as to embrace in distinct parcels all the upland contained in the tract described therein.
It appears, however, from the testimony, that the “ Guión tract,” so-called, is bounded on the easterly side thereof by the Maumee river, a navigable stream, and that lying next *72 east of the upland of said tract, is valuable riparian property, consisting in part of marsh or wet lands, land covered by a shallow depth of water, and easterly of the northern portion of said upland, of several acres of low land, formed by acci’etions, the result of the action of the elements and the flow of the currents in that vicinity; and a controversy has arisen here as to whether or not this riparian property, including the accretions above mentioned, are included in |and covered by the .three mortgages above described. The plaintiff, as assignee of Raymer, Seagreave & Co., claims to the extent of the interest represented by him, that no part of this ripai’ian property is subject to the lien of the mox'tgages, but that it should go to the general ci-editors. It is also insisted in behalf of Yeager and his mortgagees, that as to an undivided one-fourth part of the riparian property, the same rule of construction should apply. And this is the important question in the case.
It may be here remarked that all the parties to, the transaction connected with the negotiation of the loans and the execution of the mortgages in question, were informed at the time of the situation and condition of the property mortgaged. It is only as relating to this aspect of the case that the testimony contained in the depositions offered by the three mortgagees and received subject to objection, was considered by us.
What, then, is the true construction of these instruments so far as relates to the lands described and included therein ?
In the treaty with the Indians, concluded at Maumee, February 18, 1823, there was reserved to Leon Guión and his children the ti’act in question, and it was therein described as containing eighty acres. In the United States survey it is marked as containing eighty acres.
On April 30, 1836, Paul Guión, a son of Leon Guión, then deceased, conveyed to Daniel Chase his one-fourth interest in said tract, describing it as the “ Guión farm,” and as bounded on the southeast by the Maumee river. In a supplemental *73 deed, dated May 2, 1836, in which the wife of the grantor joined, the tract is said to contain eighty acres. On April 3, 1845, Leon Guión conveyed to James L. Chase and Daniel V. Edsell an undivided one-fourth part of the same tract, describing it as containing eighty acres. It is also so described in subsequent deeds. In the suit for specific performance ■ against Chase, mentioned in these proceedings, it is described as containing eighty-six acres. The same description is contained in the deed from Chase to Montgomery and from Montgomery to Seagrave, trustee, and from Seagrave to Butler, and in several other conveyances.
Neither of the mortgages in question describes the property mortgaged by metes and bounds. Each of them describes it as a portion of the “ Guión tract.” Had each of them covered the entire tract, and described it as the “Guión tract” containing eighty acres more or less, as stated in the early conveyances, and as shown in the United States survey; oras containing eighty-six acres, as shown in the later deeds, there is no doubt but that such description would have passed, not only the upland, but the riparian interests and the accretions as well; for the accretions form part of the land to which they become attached, and pass as a part thereof.
Keeping these considerations in view, let us again recur to the descriptions of the respective parcels of the tract contained in these three mortgages.
The first in the order of date is to the Pawtucket Institution for Savings ; in this the land mortgaged is described as “ That part of the Leon Guión tract in the city of Toledo, Lucas county, Ohio, containingthirty acres of upland adjoining the north forty acres of said tract, and bounded,”etc. Here the property is described as a part of the Leon Guión tract; it is that part of the tract which lies next south of the north forty acres; it contains thirty acres of upland. Plainly, as it appears to us, here is not a mortgage of thirty acres of upland only, but a mortgage of so much of the trad lying south of the north forty acres as contains thirty acres of upland ; and this carries *74 with it so much of the riparian property as lies next east of this thirty acres of upland; in other words, the north and south lines of the thirty acres of upland are to be extended to the thread of the channel of the stream.
It will be seen as a result of this construction, that the mortgage above referred to bisects the tract, separating the north forty aeres of upland, with the riparian property connected therewith, from that portion of the tract which lies south of the thirty acres with the riparian property attached, described in that mortgage.
Wc come next to the parcel described in the mortgage to Jennie Lasalle. It is “ The north forty acres of upland of the Leon Guión tract, in and adjoining the city of Toledo,” &c., “ and bounded on the south by a line parallel with the north line of said tiact.”
While this description is not so clear in its terms as the one discussed above, we are nevertheless of the opinion that it should receive the same construction. The mortgage takes so much of the north part of the tract as includes forty acres of upland with the riparian rights appertaining thereto and the lands connected therewith formed by accretion. In ascertaining the forty acres of upland the north line of the tract is to be treated as the north line of the parcel here described.
The third mortgage, which is'to Jude Taylor, seems to require a different construction. There the description is as follows : “ The west ten (10) acres of that part of the Leon Guiojn tract south of and adjoining the north seventy (70) aeres, all in the city of Toledo, Lucas county, Ohio-, located on Summit avenue and the west bank of the Maumee river.”
We do not regard the last clause in this description as referring particularly to the ten acres mentioned ; we think it applies to and is a part of the description of the whole tract. The lands mortgaged, then, are the west ten acres next south of and adjoining the north seventy acres. In our judgment this description gives the mortgagee the westerly ten acres lying south of the north seventy acres, if so much there be. *75 According to a recent survey, the entire tract, excluding the riparian property lying west of the shore line, contains but seventy-seven and 84-100 acres. This would leave Mr. Taylor but seven and eighty-four one-hundredths acres of upland. But we think, and so hold, that he is entitled to ex■tend his lines so far easterly upon the riparian property as may be required to give him the full quantity of ten acres called for in his mortgage.
In this connection we will also dispose of questions arising between other parties as to their rights in the surplus riparian property, if any there be, lying easterly of the above mentioned ten acres.
(а) On December 2, 1884, James Raymer, Frank E. Sea-grave and Orville B. Seagrave conveyed to Albert Butler all their interest (being an undivided three-fourths) in “that portion of the Leon Guión tract south of and adjoining the north seventy acres of the same, and excepting also the west ten acres of said south part, and containing fourteen acres-more or less.” It is shown in the testimony that by one survey made for the owners of the fee, the tract appeared to contain ninety-four acres. Excluding the eighty acres mortgaged as before shown, there would remain in the tract, according to this survey, fourteen acres; and their three-fourths share of this fourteen acres Raymer, Seagrave & Co. undertook to convey to Mr. Butler by the deed above mentioned. It was located, however, south of the seventy acres mortgaged to thePawtucket Institution' and Jennie Lasalle, and east of the ten acres mortgaged to Taylor. If there shall be found any property, riparian or otherwise, belonging to the tract, lying east of the ten acres mortgaged to Taylor, Mr. Butler is entitled to an undivided three-fourths of it.
(б) On May 26, 1885, John Yeager executed a mortgage-for $300 to the defendant August Brooke, upon “ the undivided one-fourth part of all that tract of land situate in and adjoining the city of Toledo, in Lucas county, Ohio, known *76 as the Leon Guión tract, the premises hereby conveyed being more particularly described as being the undivided one-fourth part of the south twelve acres, more or less, of said tract; said twelve acres, more or less, being all of that part of said tract which is not now encumbered by mortgage.”
This mortgage was filed for record May 27, 1885.
Accoi’ding to another survey made for the owners, the entire tract appeared to contain ninety-two acres. This mortgage appeal’s to have been drawn with reference to that survey.^ The onlypportion of the tract not previously mortgaged, according to our finding, is so much of it, if any there be, as lies east of thefsoutherly ten acres. The mortgage to Brocke is therefore'jlimited accordingly.
(c)“ Another mortgage was executed by said Yeager, May ”26, 1885, to[,Christian Loseby, by the same description, to segure |595. This mortgage was filed for recoi’d May 27, 1885. The remarks madejjabove as to the Brocke mortgage are applicable here. These two mortgages appear to stand upon an equality.
Upon the argument it was insisted by counsel representing the defendant Butler, that it nowhere appeared in the evidence that the Pawtucket Savings Institution was authorized by law to take a mortgage in its corporate capacity, of the chai’acter set forth in its^answer and cross-petition. In his amended answer and cross-petition the defendant Butler admits the execution of the notes described, and the execution, delivery and record of the mortgages set out in each of the amended answers and cross-petitions ; he also admits the amounts due on said several notes to be as in the several answers and cross-petitions stated. It occurs to us, in view of these admissions contained in the answer and cross-petition of Mr. Butler, that his objection cannot be successfully maintained.
5. .Another question is made in behalf of the defendant Butler, which is of more importance and is entitled to further consideration. It appears that at and prior to the foreclosure proceedings under which Raymer, Seagrave, Seagrave and *77 Yeager acquired their title, this Guión tract, so-called, was •owned by E. P. Bassett, James Raymer, F. E. Seagrave, John Yeager, Edward Woodruff, Wm. Rawle, Chas. Butler and Wm. Seagrave, eight persons. The title held by these eight persons was acquired as follows: On the 20th of May, 1874, James Montgomery, who was then the owner of the tract, conveyed to E. P. Bassett, James Raymer, F. E. Seagrave, ■John Yeager, Edward Woodruff and William Rawle an undivided six-eighths of the tract, each of these grantees to hold in his own right an undivided one-eighth. Shortly afterwards the same grantor conveyed to F. E. Seagrave, as trustee, the remaining undivided two-eighths, Seagrave to hold the legal title to this undivided two-eighths in trust for himself and his associates above named. On the 6th of July, 1874, F. E. Seagrave, as trustee, conveyed to Albert Butler an undivided one-eighth of said tract, being a portion of the undivided two-eighths conveyed to him by James Montgomery in trust as above stated; and afterwards he conveyed to William H. Seagrave the remaining undivided one-eighth. According to these conveyances, each of these persons held an undivided one-eighth of the entire tract. The property was •subject to the lien of the mortgage which was afterwai’ds foreclosed, amounting to $28,500. It was stipulated in the deeds under which these parties took their title to this property, that each of them should assume and pay an undivided ■one-eighth part of the mortgage debt. The deed from Sea-grave to Butler contains this covenant: “ X hereby covenant •that the title so conveyed is clear, free and unincumbered, and that I will warrant and defend the same against all claims whatsoever, except mortgages given to secure the purchase of the same, amounting to $34,500, of which $6,000 has been paid, and of which the grantee is to pay one-eighth.”
Default was made in the payment of these mortgages. The defendant, Butler, paid a portion of the liability which he assumed, but left a considerable portion unpaid. The other seven parties were entirely in default. These mortgages, as I *78 stated in the outset, were foreclosed and the property brought to sale, and it was under and by virtue of that sale that the four persons, the two Seagraves and Raymer and Yeager, acquired title to the premises now in question here. The mon- • eys which were borrowed, as stated, were obtained for the purpose of paying and satisfying the decree of foreclosure rendered upon this same indebtedness.
The claim made by Butler in respect to this matter is this: That when Mr. Seagrave, as one of the purchasers at this foreclosure sale, obtained title to an undivided one-fourth of the property, he held it, to the extent at least of the undivided one-eighth part which he had conveyed to Butler, in trust for him. The authorities unquestionably maintain the general doctrine that where a vendor of lands is bound to protect the title of his vendee, he cannot acquire, by reason of default on his part in the removal of liens or incumbrances, any right or interest to the prejudice of the vendee. This general principle is well established in the law.
It is to be observed however, that there were in all eight owners of this property. Each of these eight owners was bound to pay one-eighth part of the mortgage incumbrance. Mr. F. E. Seagrave, who had conveyed to Butler in his capacity as trustee only, an undivided ,one-eighth part was no more bound to protect the property against a sale so far as respected the liability of the other six parties, than was Butler. He was under no more obligation to Butler to see that the property was protected against the default of the other six parties than was Butler bound to Sea-grave to see that it was protected against the default of those parties. Butler himself was in default; Seagrave and all the other parties were in default, and by reason of this common and general default the property was brought to sale.
Under these circumstances, it does not seem to us that Mr. Butler can rightfully assert the claim which he here makes, especially to the prejudice of these mortgagees, and it is accordingly disallowed.
*79 6. There must be, as a matter of course, a decree and an order for the sale of this property. The plaintiff, the' assignee, represents only a three-fourths interest in the property which is covered by these mortgages. The mortgagees'are entitled to have the entire property sold, be-, ■cause their mortgages cover the entire property. It seems hardly proper to direct that the assignee shall sell as assignee, under the statute, the undivided three-fourths part which he represents, and that another officer, a sheriff or master commissioner, shall sell the other undivided one-fourth part of the property. It should all be sold by one person, and in such lots as will best protect the interests of all parties concerned. 31 occurs to us that an order should be entered as in the court below, directing the sale to be made by the sheriff. The assignee, however, is entitled to compensation for his services in this proceeding.
The property will be ordered sold in parcels as it has been ■mortgaged. It is scarcely proper to direct that it be sold as •an entirety with these three mortgages upon distinct parcels of it. Each of these mortgaged parcels should be appraised and sold in a parcel by itself.
The order will be, then, in substance, that the sale be made by the sheriff in parcels, according to the mortgages; that from the proceeds of the sale shall be paid first, the taxes and assessments standing upon the duplicate of the county .against the property. Second, the costs, including compensation to the plaintiff. The costs that have accrued down to the time of the sale, are to be paid from the entire-fund. The costs of each respective sale to be paid from the proceeds of •such sale. The balance to be applied upon the several mortgages in accordance with the foregoing opinion.
The mortgages to Brooke and Loseby may be provided for If there shall be found anything in the tract upon which they may be made to operate.
If the parties cannot agree .upon the compensation to be allowed the assignee, we will fix it hereafter. The statute *80 provides that in cases of this character the respective liens upon the property shall be paid from the proceeds of the sale, and that any surplus shall be reported by the assignee to-the probate court for distribution under the orders of that court; but, in view of the fact that it seems very probable that these liens will exhaust .the fund, it is proper that we provide, not only for the payment of the ordinary costs, but for a reasonable compensation to the assignee.
E. H. Rhoades, for plaintiff.
Bissett & Gorrill, for defendant John Yeager.
O. W. Everett, for defendant Charles Butler.
E. D. Potter, jr., and Alexander L. Smith, for defendants-The Pawtucket Institution for Savings, Jennie W. Lasalle,. and Jude Taylor.